**BEFORE THE
UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| THE AMERICAN HFC COALITION, ARKEMA INC., THE CHEMOURS COMPANY FC, LLC, HONEYWELL INTERNATIONAL INC., MEXICHEM FLUOR, INC. </br></br> *Plaintiffs*, </br></br> v. </br></br> UNITED STATES, </br></br> *Defendant*. | </br></br></br></br></br></br></br> Court No. 23-00210 |

**COMPLAINT**

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs, the American HFC Coalition and its individual members, Arkema, Inc., The Chemours Company FC, LLC, Honeywell International Inc., and Mexichem Fluor Inc. ("Plaintiffs" or "the Coalition"), by and through their attorneys, allege herein as follows.

**ADMINISTRATIVE DETERMINATION TO BE REVIEWED**

1. The Coalition contests certain aspects of the U.S. Department of Commerce's ("Commerce") final determination in the administrative review concerning the antidumping duty order covering 1,1,1,2-Tetrafluoroethane (R-134a) from the People's Republic of China, published in the *Federal Register* on September 5, 2023. *See 1,1,1,2-Tetrafluoroethane (R-134a) From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021-2022* 88 Fed. Reg. 60639 (Sept. 5, 2023) ("*Final Determination*") and accompanying Issues and Decision Memorandum ("*Final IDM*").

## JURISDICTION

2.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1581(c) because this action is commenced under 19 U.S.C. § 1516a(a)(2)(B)(iii).

3.  Alternatively, this court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1581(i) because this case arises from a determination made by the United States concerning "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  28 U.S.C. § 1581(i)(1)(B).

## TIMELINESS OF ACTION

4.  Commerce's *Final Determination* was published in the *Federal Register* on September, 5, 2023. Pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i), the Coalition commenced this action by timely filing a Summons with this Court on October 5, 2023, which is 30 days after the date the *Final Determination* was published in the *Federal Register*, and is now filing the Complaint within thirty days after filing of the Summons. Accordingly, this action is timely in accordance with 28 U.S.C. § 2636(c) and within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and United States Court of International Trade Rule 3(a)(2).

## STANDING

5.  The Coalition is a trade or business association a majority of whose members manufacture, produce or wholesale a domestic like product in the United States. The Coalition was the petitioner in the underlying antidumping duty investigation. The Coalition also requested the administrative review that is subject to this appeal and actively participated in that proceeding. Accordingly, the Coalition is an interested party within the meaning of 19 U.S.C. § 1677(9)(E) and has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

6. The individual plaintiffs, Arkema, Inc., The Chemours Company FC, LLC, Honeywell International Inc., and Mexichem Fluor, Inc., are domestic manufacturers or wholesalers of the domestic like product, R-134a, that is covered by the underlying antidumping duty order. The individual plaintiffs were petitioners in the underlying antidumping duty investigation and interested parties in the administrative review that is subject of this appeal. The individual plaintiffs, through the Coalition and on their own behalf, requested the administrative review that is subject to this appeal and actively participated in that proceeding. Accordingly, the individual plaintiffs are interested parties within the meaning of 19 U.S.C. § 1677(9)(C) and has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## PROCEDURAL HISTORY

7. Commerce published an antidumping duty order covering R-134a from the People's Republic of China in the *Federal Register* on April 19, 2017. *See 1,1,1,2-Tetrafluoroethane (R-134a) From the People's Republic of China: Antidumping Duty Order*, 82 Fed. Reg. 18,422 (Apr. 19, 2017) ("*R-134a Order*").

8. In response to requests for an administrative review of the *R-134a Order* by the HFC Coalition, "its individual members," and Zhejiang Sanmei Chemical Ind. Co., Ltd. ("Sanmei"), Commerce initiated an administrative review on June 9, 2022. *See Initiation of Antidumping and Countervailing Duty Administrative Review*, 87 Fed. Reg. 35165 (June 9, 2022); *see also* Letter from HFC Coalition, "Request for Administrative Review of Antidumping Duty Order" (April 29, 2022).[1]

---

[1] The April 29, 2022, request for review and all subsequent filings by the HFC Coalition were also filed on behalf of the Coalition's "individual members," and separately identified each member. Accordingly, references herein to the "HFC Coalition" also include its members in their individual capacity.

9. Because China is considered a non-market economy ("NME") in the context of antidumping duty proceedings, it was necessary for Commerce to select an appropriate surrogate market economy to value the factors of production. On November 1, 2022, Commerce placed on the record a "non-exhaustive list of countries that Commerce has determined, based on per capita Gross National Income ('GNI'), is at the same level of economic development as China." *See* Commerce Memorandum, "Request for Economic Development, Surrogate Country and Surrogate Value Comments and Information" (Nov. 1, 2022). Attached to this invitation to comment was another memorandum identifying six countries that Commerce considered to be at "the same" level of economic development as China.  *See* Commerce Memorandum, "List of Surrogate Countries for Antidumping Investigations and Reviews from {sic} the People's Republic of China" (Aug. 19, 2022) ("GNI List"). Commerce provided "interested parties an opportunity to comment on the list as a starting point for surrogate country selection…and to propose for consideration other countries that are at a level of economic development comparable to China." *Id.*

10. On November 15, 2022, the Coalition submitted comments on Commerce's GNI List and factual evidence showing that Mexico was comparable to China in terms of per-capita GNI. *See* Letter from HFC Coalition, "Comments on Surrogate Country List" (Nov. 15, 2023). Therefore, the HFC Coalition requested that Commerce "include Mexico as a potential surrogate country, primary surrogate, and source of representative financial ratios in this review." *Id.*

11. On November 29, 2022, the Coalition submitted comments and evidence concerning the selection of a primary surrogate country. *See* Letter from HFC Coalition, "Comments on Surrogate Country Selection" (Nov. 29, 2022). Therein, the Coalition submitted evidence that R-134a and other fluorocarbon refrigerant gases were not produced in any of the six countries

4

identified on the Commerce GNI list. The Coalition also submitted evidence that R-134a was produced in Mexico during the period of review.

12. On March 29, 2023, the Coalition submitted comments and additional evidence in advance of the preliminary determination again demonstrating that Mexico was economically comparable to China and the only potential surrogate country that produced R-134a or comparable fluorocarbon refrigerant gases. *See* Letter from HFC Coalition, "Petitioners' Preliminary Results Comments and Submission of Surrogate Values" (Mar. 29, 2023).

13. On May 3, 2023, Commerce published the preliminary results and preliminarily selected Romania as the primary surrogate country. *See 1,1,1,2-Tetrafluoroethane (R-134a) From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission, and Preliminary Determination of No Shipments; 2021-2022*, 88 Fed. Reg. 27861 (May 3, 2023) ("*Preliminary Results*") and accompany Decision Memorandum ("*PDM*"). Commerce found that Bulgaria, Malaysia, Romania, and Turkey "are significant producers of comparable merchandise and are a reliable source of publicly available surrogate data." PDM at 13. Commerce cited the fact that these countries "were exporters of comparable merchandise during the {period of review}." *Id.* Commerce next noted that Mexico was not "within the GNI range" considered to be "the same" as China. *Id.* Commerce then concluded that "there is no basis upon which to consider Mexico in our {surrogate country} analysis." *PDM* at 14.

14. On June 9, 2023, the HFC Coalition filed a case brief and argued, again, that record evidence demonstrated that none of the GNI List countries produced R-134a or other fluorocarbon chemicals or their unique and unusual inputs. *See* Letter from HFC Coalition, "Case Brief of the HFC Coalition" (June 9, 2023). The Coalition again argued that, in contrast to

the GNI List countries, Mexico was economically comparable to China and a significant producer of identical merchandise. *See Id.*

15. Following the filing of briefs by the Coalition and Sanmei, Commerce issued the final determination and *Final IDM* contested in this action. Commerce again found "no basis for selecting Mexico" as the surrogate country and instead selected Romania, one of the countries identified on the GNI List. *Final IDM* at 6.

## CLAIMS

### Count 1

16. Paragraphs 1 through 15 of this Complaint are incorporated herein by reference.

17. Insofar as Commerce found that Mexico, as compared to other GNI list countries, was not at "the same" level of economic development as China for purposes of 19 U.S.C. § 1677b(c)(4)(A), its determination was not supported by substantial evidence on the administrative record.

### Count 2

18. Paragraphs 1 through 17 of this Complaint are incorporated herein by reference.

19. Commerce found "clear record evidence" that certain GNI List countries were "significant producers" of "comparable merchandise" for purposes of 19 U.S.C. § 1677b(c)(4)(B). The only "clear record evidence" cited by Commerce consisted of export statistics showing that certain GNI List countries exported R-134a or other fluorocarbon refrigerant gases during the period of review. *Final IDM* at 11. There was otherwise no direct evidence of actual production of R-134a or other fluorocarbon refrigerant gases in any of the GNI list countries.

20. The legislative history indicates that the existence of "net" exports may support an inference that the products were produced in the exporting country. *Final IDM* at 9-10. The record evidence showed that each of the GNI List countries exporting R-134a or other fluorocarbon refrigerant gases were net importers, not net exporters.

21. The record otherwise included an independent market research report indicating that R-134a or other fluorocarbon refrigerant gases were not produced in any of the GNI List countries. In addition, evidence including U.S. government agency reports established that the essential raw material needed for the production of R-134a or other fluorocarbon refrigerant gases was not mined or processed in any country on GNI List.

22. Commerce's reliance on an inference that certain GNI List countries were significant producers of comparable merchandise for purposes of 19 U.S.C. § 1677b(c)(4)(B) was not supported by substantial evidence in the administrative record.

## Count 3

23. Paragraphs 1 through 22 of this Complaint are incorporated herein by reference.

24. Insofar as Commerce found that Mexico, as compared to other GNI List countries, was not at a "comparable" level of economic development as China for purposes of 19 U.S.C. § 1677b(c)(4)(A), its determination was not supported by substantial evidence on the administrative record.

## Count 4

25. Paragraphs 1 through 24 of this Complaint are incorporated herein by reference.

26. To identify the primary surrogate country for China, Commerce has adopted a "Sequencing Procedure," explained in Policy Bulletin 04.1, that generally calls for the analysis of economic comparability before it considers merchandise comparability. *See Final PDM* at 11-

12. However, there is an exception to this "standard" sequencing procedure for merchandise that is "unique or unusual" within the meaning of Policy Bulletin 04.1. *See Final PDM* at 12.

27. The administrative record showed that the chemical composition of R-134a or other fluorocarbon refrigerant gases required the presence of fluorine, which was imparted to the finished merchandise through the use of fluorspar or hydrogen fluoride as a raw material in the production process. The record also established that the presence of fluorine and the form of the finished product, a gas, was essential to the end-use of the merchandise. Finally, the record showed that the Chinese producer of R-134a, as well as the producers of R-134a in Mexico and the United States, relied on highly complex, multi-step production processes to manufacture R-134a and other fluorocarbon refrigerant gases. No contrary evidence was submitted on the record.

28. Commerce's finding that "the record lacks sufficient evidence to demonstrate that R-134a is a unique or unusual product within the meaning of Policy Bulleting 04.1" (Final PDM at 12) was not supported by substantial record evidence.

29. Commerce's finding that "the record lacks sufficient evidence to demonstrate that R-134a is a unique or unusual product within the meaning of Policy Bulleting 04.1" (Final PDM at 12) was not consistent with the statute or administrative and judicial precedent, and therefore was not in accordance with law.

Count 5

30. Paragraphs 1 through 29 of this Complaint are incorporated herein by reference.

31. Separate from the issue whether Mexico should have been selected as the primary surrogate for China, the record included affirmative, undisputed evidence that Mexico was a significant producer of R-134a. No inference was required to support this conclusion and neither

Commerce nor Sanmei disputed that fact. This evidence included the 2021 financial statement of CYDSA, S.A. de C.V., a Mexican chemical producer operating a joint venture with Honeywell International Inc. to produce R-134a.

32. Despite that CYDSA's joint venture produced R-134a, which is the identical merchandise produced by Sanmei and covered by the antidumping duty order, Commerce relied upon the financial statement of a Romanian producer of various chemicals, none of which contain fluorine. *Final IDM* at 15-18. This determination was not supported by substantial evidence and otherwise inconsistent with the statute, regulations, and administrative and judicial precedent.

## REQUEST FOR JUDGMENT AND RELIEF

WHEREFORE, the Coalition respectfully requests that this Court:

33. Hold that Commerce's *Final Determination* was not supported by substantial evidence or in accordance with law;

34. Remand this matter to Commerce for disposition consistent with the final opinion and order of the Court; and

35. Grant such further relief as this Court deems just and proper.

Dated:  November 6, 2023                                Respectfully submitted,

/s/ James R. Cannon, Jr.

James R. Cannon, Jr.
Chase J. Dunn
**CASSIDY LEVY KENT (USA) LLP**
900 19th Street, NW, Suite 400
Washington, D.C. 20006
Phone: (202) 567-2300
Email: jcannon@cassidylevy.com
*Counsel to the American HFC Coalition and its individual members*

## Certificate of Service

Pursuant to USCIT R. 5 and Paragraphs 5 and 6 of Administrative Order 02-01 of the U.S. Court of International Trade, I hereby certify that on the 6th day of November, 2023, I will have caused service of the following document(s):

> Ct. No. 23-00210
>
> Complaint

to be made in the manner described below:

    A.    **By hand, addressed to the following parties:** (List names and addresses of parties so served, and if service is upon an attorney, the name of the party represented by the attorney.)

>  

    B.    **By certified or registered mail, return receipt requested**, **addressed to the following parties**: (List names and addresses of parties so served, and if service is upon an attorney, the name of the party represented by the attorney.)

> Attorney in Charge
> International Trade Field Office
> U.S. Department of Justice, Civil Division
> Room 346, Third Floor
> 26 Federal Plaza
> New York, NY 10278
>
> Supervising Attorney
> U.S. Department of Justice
> Commercial Litigation Branch
> Civil Division
> P.O. Box 480
> Ben Franklin Station
> Washington, DC 20044
>
> Office of the General Counsel
> U.S. Department of Commerce
> 14th Street and Constitution Avenue, NW.,
> Washington, DC 20230
>
> Xiaohua Hou
> Representative of Zhejiang Sanmei Chemical Ind. Co., Ltd.
> Commerce & Finance Law Offices
> 12-14th Floor, China World Office 2,
> No. 1 Jianguomenwai Avenue,
> Beijing 100004, China

Xiangyu Liu
Representative of T.T. International Co., Ltd.
Commerce & Finance Law Offices
12-14th Floor, China World Office 2,
No. 1 Jianguomenwai Avenue,
Beijing 100004, China

C.      **By first-class mail, addressed to the following parties**: (List names and addresses of parties so served, and if service is upon an attorney, the name of the party represented by the attorney.)

D.      **By express mail or overnight carrier, addressed to the following parties**: (List names and addresses of parties so served, and if service is upon an attorney, the name of the party represented by the attorney.)

/s/    | James R. Cannon, Jr.
Cassidy Levy Kent (USA) LLP
900 19th Street, NW
Suite 400
Washington, DC 20006-2110
202-567-2318
jcannon@cassidylevy.com

(Name, Affiliation and Address of Person Effectuating Service)#